IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., *Jane Doe, individually, John Doe, individually, Jesse Doe, individually, Jamie Doe, individually* *Plaintiffs*, v. EMANUEL COUNTY SCHOOL DISTRICT (A/K/A/ "Emanuel County Schools"), KEVIN JUDY, individually and in his official capacity as superintendent of Emanuel County School District, VALORIE WATKINS, individually and in her official capacity as principal of Swainsboro Primary School, KAYTRENE BRIGHT, individually and in her official capacity as a Swainsboro Primary School teacher, AND CEL THOMPSON, individually and in her official capacity as a Swainsboro Primary School teacher *Defendants*. | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | Civil Action No. 6:15-cv-00013 |

# FIRST AMENDED COMPLAINT

Seeking to protect and vindicate their constitutional rights, Plaintiffs state as their complaint against the above-captioned Defendants the following:

## NATURE OF THE CLAIMS

1. This action challenges the constitutionality of the Defendants' practice of allowing employees to organize, participate in, and endorse prayer in the classroom and proselytize students. Defendants' religious practices advance and endorse one religion, improperly entangle the State in religious affairs, and violate the personal consciences of nonreligious parents and students.

2. Plaintiffs seek a declaration that the Defendants' prayer and proselytizing practices violate the Establishment Clause of the First Amendment, applicable to Georgia by the Fourteenth Amendment, an injunction prohibiting the Defendants from organizing, participating in, or endorsing prayer or proselytizing students in the future, and damages, under 42 U.S.C. §1983, together with recovery of attorney fees and costs under 42 U.S.C. §1988(b).

## JURISDICTION AND VENUE

3. The claims for relief and the causes of action alleged herein arise under the First Amendment to the Constitution of the United States, as applied to Georgia by the Fourteenth Amendment, and under 42 U.S.C. § 1983.

4. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

5. This Court has authority to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57. This Court has authority to provide injunctive relief and damages under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to the Plaintiffs' claims occurred herein.

## THE PARTIES

7. Plaintiff the Freedom From Religion Foundation ("FFRF") is a national nonprofit 501(c)(3) educational charity, incorporated in Wisconsin with its principal place of business in Wisconsin. FFRF has more than 21,500 members nationwide, including more than 400 in Georgia and an Atlanta-based chapter. FFRF defends the constitutional principle of separation between state and church and educates the public about the views of non-theists. FFRF advocates on behalf of its members throughout the United States.

8. Plaintiffs Jane Doe and John Doe reside within the jurisdiction of Emanuel County Schools ("ECS") and have two children (Jesse Doe and Jamie Doe, collectively the "Doe children") who have attended Swainsboro Primary School this school year. Jane and John are not religious and are members of FFRF. Jane

and John wish to raise their children without religion and elected to send their children to Defendants' public school in furtherance of that goal.

9. Plaintiff Jesse Doe resides within the jurisdiction of ECS and is a first grade student attending Swainsboro Primary School. Jesse is not theistic. ECS staff have subjected Jesse to Christian prayer in the classroom. In an effort to endorse prayer and to continue imposing prayers on students, ECS staff discriminated against Jesse Doe, despite the protests of FFRF, Jane, and John. Jesse was ultimately removed from class and placed in a new classroom as a result of the conflict over school-endorsed prayer.

10. Plaintiff Jamie Doe resides within the jurisdiction of ECS and was enrolled as a kindergarten student attending Swainsboro Primary School at the start of the school year. Jamie is not theistic. ECS staff subjected Jamie to Christian prayer in the classroom. Jane and John Doe ultimately removed Jamie from the school after Jamie's repeated complaints about feeling uncomfortable in class. Jamie's discomfort arose, at least in part, from in-class prayers.

11. Defendant Emanuel County Schools is the governing body of public schools in Emanuel County, Georgia. At all times ECS has operated as a government actor under the color of state law.

12. Defendant Kevin Judy is the Superintendent of ECS. His primary duty is the implementation of ECS policies and programs, consistent with the rules and

regulations promulgated by the Georgia Department of Education, the laws and Constitution of the State of Georgia, and the laws and Constitution of the United States of America.

13. Defendant Valorie Watkins is the principal of Swainsboro Primary School. She serves as the administrative head of the school, and is responsible for the coordination and direction of all school activities, including oversight of teachers and classroom activities.

14. Defendant Kaytrene Bright is a first grade teacher at Swainsboro Primary School. She was Jesse Doe's teacher until the start of the January 2015 term and is responsible for implementing ECS's policies and directions as to appropriate classroom instruction and activities.

15. Defendant Cel Thompson is a kindergarten teacher at Swainsboro Primary School. She was Jamie Doe's teacher and is responsible for implementing ECS's policies and directions as to appropriate classroom instruction and activities.

## FACTUAL BACKGROUND

16. At the beginning of the 2014-2015 school year, ECS's employees at Swainsboro Primary School regularly led their classes in Christian prayer. Prior to lunch, teachers would ask their students, including kindergarteners and first graders, to bow their heads, fold their hands, and pray.

17.     In Jamie's kindergarten class, Defendant Cel Thompson led students in a call and response prayer: "God our Father, we give thanks, for our many blessings. Amen."

18.     In Jesse's first grade class, Defendant Kaytrene Bright led students in a daily prayer: "God is great. Let us thank you for our food. Thank you for our daily prayer. Thank you. Amen."

19.     During August 2014, Jane and John Doe notified Principal Watkins about the prayers and their objections. Rather than ending the prayers, Thompson and Bright told the Doe children to leave their classrooms and sit in the hallway while the rest of the class prayed.

20.     Jesse reported to Jane Doe that Jesse's teacher, Kaytrene Bright, "used her mean voice" when instructing Jesse to wait in the hallway.

21.     Bright additionally told the class that Jesse cannot recite the Pledge of Allegiance with the rest of the class, since it contains the words "under God."

22.     Jane and John Doe never discussed the Pledge of Allegiance with any of the defendants. Bright initiated this new policy, which further stigmatized and singled out Jesse, on her own initiative or at ECS's instruction.

23.     Jamie Doe's teacher, Cel Thompson, announced to the entire kindergarten class that Jamie was not allowed to pray to God and then told Jamie to wait in the hallway while the rest of the class prayed.

24.     A fellow student later teased Jamie for being punished for not praying. Although the student was asked to apologize to Jamie, no further action was taken.

25.     After being told to wait in the hallway during prayer, Jamie complained to Jane and John about feeling uncomfortable at school. This was the first time Jamie voiced such a complaint. Jamie continued to voice similar complaints in the following weeks until Jane and John were forced to remove Jamie from the school.

26.     Homeschooling Jamie has placed a substantial burden on Jane, who has three other, younger children to supervise at home during the school day.

27.     Defendants have received previous complaints about prayers in classrooms, prior to the 2014 school year.

28.     On or about August 18, 2014, John Doe spoke with Principal Watkins about forcing the Doe children to sit in the hallway during classroom prayer.

29.     Principal Watkins stated to John that other parents who do not want their children to participate in prayer have been "okay" with their children being taken out of class.

30.     John explained to Watkins that this "solution" was unacceptable, but after that conversation Bright continued to conduct daily prayers in her classroom at least until Jesse was moved to a different class in January 2015.

31.     Thompson continued to pray with students every day in Jamie's classroom at least until John and Jane removed Jamie from school due to the classroom prayers.

7

32. On August 20, 2014, FFRF sent a letter to ECS, Superintendent Judy, and Principal Watkins objecting to the prayers. FFRF explained that both the original classroom prayer practice and the revised practice violate the Establishment Clause of the First Amendment to the United States Constitution. (Exhibit 1.)

33. On September 5, 2014, ECS's attorney, Philip L. Hartley, responded to FFRF. He indicated that Superintendent Judy had "talked with the principal of the primary school and taken steps to stop the conduct" described in FFRF's letter. (Exhibit 2.)

34. Despite Defendants' response letter, ECS employees, including Bright, continued to organize, participate in, and endorse prayer to their students, including Jesse.

35. Defendants continued to organize, participate in, and endorse prayer to students despite being aware that the practice is illegal and violates the rights of the Doe family.

36. On or about December 1, 2014, ECS employee Kim Hooks, Jesse's science teacher, encouraged Jesse to "make a good decision" regarding prayer in the classroom.

37. On or about December 8, 2014, ECS employee Vanessa Wilkes, Jesse's physical education teacher, encouraged Jesse to begin praying with the rest of the students in Jesse's class.

38.     On or about December 3, 2014, Bright held Jesse back from recess to talk to Jesse about Bright's personal conception of the Christian god. Bright spent almost the entire recess period explaining her personal views on Christianity's god: that God loves Jesse and that God made the world.

39.     Bright also told Jesse that Jesse should not listen to Jane Doe, Jesse's mother, because Jane is a bad person for not believing in God.

40.     Bright's instructions to Jesse have made Jane feel that the school district is undermining her parental authority and creating a rift between Jesse and herself.

41.     On December 10, 2014, Jane learned from Jesse that Jesse had begun praying with the rest of the class because Jesse felt compelled to do so by Bright and other ECS employees.

42.     Jane and John ultimately requested that Jesse be moved to a different class due to their fear that if they continued to let Bright interact with Jesse that she would further undermine Jane and John's authority as Jesse's parents and would further violate their family's freedom of conscience.

## CAUSES OF ACTION

43.     Plaintiffs incorporate by reference every numbered paragraph above as if fully restated herein.

44.     By leading, organizing, participating in, and endorsing prayer in the classroom to students, Defendants and their agents or employees violate the

Establishment Clause of the First Amendment, which is incorporated to the states by the Fourteenth Amendment to the United States Constitution.

45. Defendants' policies, customs, and actions, as described herein, have no legitimate secular purpose, and are motivated by a desire to advance religion generally, and, in some instances, Christianity particularly.

46. Defendants' policies, customs, and actions have the effect of advancing or endorsing religion in general over nonreligion, and, at least in some instances, Christianity particularly over all other religions.

47. Defendants' actions improperly entangle the state in religious rituals and beliefs.

48. Encouraging the Doe children to pray, or isolating and punishing the Doe children for electing not to pray, violates the deeply and sincerely held moral convictions of the Doe children and therefore their First Amendment rights.

49. The Defendants' prayer practice encroaches on the parental rights of Jane and John Doe. The Does feel coerced by their government into raising their children in a specific set of religious beliefs to which Jane and John Doe do not adhere.

50. An actual controversy exists between Plaintiffs and Defendants as to the constitutionality of Defendants' prayer practice.

51. Defendants' actions as described herein are acts and conduct performed under color of law within the meaning of 42 U.S.C. § 1983.

52. Defendants' actions as described herein, constitute a custom, usage, or policy within the meaning of 42 U.S.C. §1983.

53. Defendants' unconstitutional acts described above have irreparably injured and continue to irreparably injure Plaintiffs.

54. Defendants' unconstitutional acts described above have harmed the reputation of the Doe family within their community and have caused mental anguish and emotional distress to the Doe family.

55. Defendants' unconstitutional acts described above have financially burdened the Doe family and continue to cause financial hardship on the family. The Doe family has already spent about $800 on homeschooling supplies and other costs related to homeschooling Jamie, excluding Jane's time investment. Additional costs include an ongoing charge of about $70 per month for internet service, which the family did not have prior to withdrawing Jamie from ECS and which the family would not have purchased but for having to homeschool Jamie.

56. Defendants' willful misconduct and callous indifference to their duties under well-established First Amendment principles support a claim for punitive damages.

57. Plaintiffs have no adequate remedy at law and monetary damages cannot fully repair these constitutional injuries.

58. Defendants' conduct, as described herein, constitutes actions taken under color of law that has caused and, unless enjoined, will continue to cause, a deprivation of constitutional rights in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

59. As a direct result of the unconstitutional actions of Defendants, described herein, attorney's fees and costs have been and will continue to be incurred on the Plaintiffs' behalf.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request:

A. That this Court declare that Defendants' conduct as described herein violates the First and Fourteenth Amendments to the United States Constitution;

B. That this Court permanently enjoin Defendants, in their official capacity, and their successors in office, and all their respective agents, employees, and others in active concert with them from organizing, participating in, or otherwise endorsing prayer in a school setting;

C. That this Court award Plaintiffs compensatory damages for loss of reputation, pain and suffering, and financial burdens resulting from Defendants' acts;

D. That this Court award Plaintiffs punitive damages;

E.    That this Court award Plaintiffs reasonable attorney fees and court costs incurred in prosecuting this action under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d);

F.    That this Court grant such additional relief, legal or equitable, as the Court deems appropriate, including but not limited to nominal damages.

RESPECTFULLY SUBMITTED,

/s/ *Wallace R. Nichols* GSB#288079
W.R. Nichols & Associates, P.C.
Wallace R. Nichols, Esq., for the Firm
1532 Dunwoody Village Parkway,
Suite 205
Atlanta, GA 30338
404-602-0040; Fax 800-768-0507
wrn@wrnicholslaw.com
Attorney for Plaintiffs

Samuel T. Grover (1096047) &
Andrew L. Seidel (1089025)
(Pro Hac Vice Motions to be filed)
Freedom From Religion Foundation
P.O. Box 750
Madison, WI 53701
(608) 256-8900