UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., JANE DOE, individually, JOHN DOE, individually, JESSE DOE, individually, JAMIE DOE, individually, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| EMANUEL COUNTY SCHOOL SYSTEM (a/k/a/ Emanuel County Schools), KEVIN JUDY, individually and in his official capacity as superintendent of Emanuel County School System; VALORIE WATKINS, individually and in her official capacity as principal of Swainsboro Primary School; KAYTRENE BRIGHT, individually and in her official capacity as a Swainsboro Primary School teacher; and CEL THOMPSON, individually and in her official capacity as a Swainsboro Primary School teacher, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. CV615-013 |
| Defendants. | ) ) | |

## ORDER

The plaintiffs have filed suit under 42 U.S.C. § 1983 alleging that defendants have violated the Establishment Clause of the First Amendment by endorsing prayer in a public school classroom located in

Emanuel County, Georgia. Doc. 22 (amended complaint). Plaintiffs seek both declaratory and injunctive relief, as well as an award of compensatory and punitive damages, attorneys fees, and court costs. *Id.* at 2, 12-13.

Two days after filing their initial complaint, the four individual plaintiffs -- the parents of children enrolled in kindergarten and the first grade at the Swainsboro Primary School, and the two students themselves -- sought leave of court to proceed using pseudonyms rather than their actual names in this litigation.[1] Doc. 17. The plaintiffs contend that even though they informed the Superintendent of the Emanuel County School System ("ECS") that the prayer and proselytizing practices of certain teachers at the primary school violated the Constitution, the practices did not cease. Instead, the teachers not only continued to lead prayer in the classroom, they began to punish the "Doe" children for not participating by making them sit in the hallway while the rest of the class prayed, trying to persuade them to ignore their

---

[1] The first-named plaintiff, Freedom From Religion Foundation, Inc. ("FFRF"), is "a nonstock corporation 'opposed to government endorsement of religion.'" *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 595 (2007). The adult plaintiffs, using the fictitious names Jane and John Doe, are members of FFRF who "wish to raise their children [Jamie and Jesse Doe] without religion." Doc. 22 at 3-4.

2

parents and join in the class prayers, and assuring one child that her mother was "a bad person for not believing in God." Doc. 22 at 9; doc. 17-2 (Jane Doe's declaration) at 2. Given the "bullying and unwanted proselytization" of the Doe children, doc. 17-1 at 15, and the documented history of retaliation against those who challenge government-endorsed prayer in the public schools or other public institutions, plaintiffs contend that this is the type of exceptional case where they must remain anonymous or else suffer reprisal from the broader community, a reprisal that they fear will be far worse than what these young children have already experienced. *Id.* at 16.

Three of the five defendants oppose plaintiffs' motion. Doc. 37 (defendant Cel Thompson's response); doc. 38 (Thompson response adopted by the defendant ECS and its Superintendent, Kevin Judy). They contend that the relevant considerations for determining whether to grant a plaintiff "Doe" status all militate against plaintiffs' request to proceed anonymously. Plaintiffs, on the other hand, argue that the relevant factors all "weigh heavily in favor of pseudonymity." Doc. 17-1 at 4.

## I.   ANALYSIS

"Lawsuits are public events," and the public has a presumptive right to know the identity of the litigants who use the courts to resolve their disputes. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (per curiam); *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997) ("The people have a right to know who is using their courts."). The Federal Rules of Civil Procedure specifically provide that "the complaint must name all the parties" to the suit. Fed. R. Civ. P. 10 (a). But "[p]ublic access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A Aug. 1981). Generally, therefore, a plaintiff may not remain anonymous and proceed under a fictitious name simply because the litigation may expose plaintiff to "some personal embarrassment." *Frank*, 951 F.2d at 324 (denying Doe status to a plaintiff alleging unlawful discrimination because of his handicap, alcoholism).

This general rule "is not absolute, however." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011). In some "exceptional" cases, the

4

public interest in knowing the identity of all the parties must yield " 'to a policy of protecting privacy in a very private matter.' " *Stegall*, 653 F.2d at 185. There is "no hard and fast formula for ascertaining whether a party may sue anonymously." *Id.* at 186. "The ultimate test . . . is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-imbedded presumption of openness in judicial proceedings.' " *Frank*, 951 F.2d at 323 (quoting *Stegall*, 653 F.2d at 186). The Eleventh Circuit, like most federal courts, has developed "a multi-factor balancing test" for weighing these competing interests.[2] *Francis*, 631 F.3d at 1315; *Frank*, 951 F.2d at 323 (noting that circuit precedent had "isolated and catalogued" some of the considerations that its prior decisions have taken into account in deciding whether to grant "Doe" status) (citing *Stegall*, 653 F.2d at 185 and *SMU*, 599 F.2d at 712). No one factor is "meant to be dispositive;" rather, it is the court's task to

---

[2] There are three recognized policy interests: (1) the public's right to open judicial proceedings; (2) the plaintiff's demonstrated need for privacy protection; and (3) fairness to the defendant. Benjamin P. Edwards, *When Fear Rules in Law's Place: Pseudonymous Litigation as a Response to Systematic Intimidation*, 20 Va. J. Soc. Pol'y & L. 437, 442 & n. 26 (2013) (citing, *inter alia*, *Southern Methodist Univ. Ass'n v. Wynne and Jaffe*, 599 F.2d 707, 714 (5th Cir. 1979) (hereinafter "*SMU*")). "To help balance the three interests fairly, courts have recognized various factors that should be considered," factors which vary depending upon the particular case under consideration. *Id.* at 449; *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008) (identifying 10 "non-exhaustive" factors).

5

"review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Francis*, 631 F.3d at 1316 (citing *Frank*, 951 F.2d at 323).

In this circuit, the "first step" in the analysis is to look at the three factors identified in the Fifth Circuit's seminal decision in *SMU* and restated in *Stegall*. *Francis*, 631 F.3d at 1316. The Court must ask (1) whether the plaintiffs who seek anonymity are challenging governmental activity; (2) whether the prosecution of their suit compels them to disclose information of the "utmost intimacy;" and (3) whether plaintiffs will be compelled to admit their intention to engage in illegal conduct, thus risking criminal prosecution. *Id.* The *SMU* factors are not "prerequisites to bringing an anonymous suit," *Stegall*, 653 F.2d at 185, for no rigid formula can hope to incorporate all the considerations that may inform the analysis of the individual case. *Id.* (noting that *SMU* was a "fact-sensitive holding"). Thus, the Eleventh Circuit has identified such additional factors "as whether the plaintiffs [are] minors, *Stegall*, 653 F.2d at 186, whether they [are] threatened with violence or physical harm by proceeding in their own names, *id.*, and whether their

6

anonymity pose[s] a unique threat of fundamental unfairness to the defendant." *Francis*, 631 F.3d at 1316 (citing *SMU*, 599 F.2d at 713).

Two of the three factors identified in *SMU* and *Stegall* apply here. First, plaintiffs clearly challenge governmental activity -- defendants' alleged policy of allowing teacher-led prayer in a public school classroom. "But of course, in only a very few cases challenging governmental activity can anonymity be justified." *Stegall*, 653 F.2d at 186. Indeed, the Eleventh Circuit has rejected the notion "that there is more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government." *Frank*, 951 F.2d at 324. It is not that suing the government weighs in *favor* of granting a request for anonymity; rather, the operative principle is that a suit against a private party weighs *against* a plaintiff's request for anonymity. *Id.* (noting that in *SMU* it was "because the plaintiffs were suing private individuals rather than a government agency [, which can suffer no injury to its good name and reputation, that] the court found *more* reason *not* to grant the plaintiffs' request for anonymity"). Here, plaintiffs sue not only a governmental entity but also the individual administrators and teachers who allegedly punished their children for refusing to participate in classroom prayer.

7

So, the fact that plaintiffs have named a governmental entity as a defendant does not establish their right to anonymity. Indeed, because plaintiffs are suing the school officials in their *individual* capacities, this factor weighs against their request for anonymity.[3]

The second *SMU/Stegall* factor -- whether plaintiffs will be compelled to disclose information of the "utmost intimacy" -- also applies, for plaintiffs' suit touches upon their beliefs about religion, a topic deemed by this circuit to be "the quintessentially private matter." *Stegall*, 653 F.2d at 186. The fact that religion is an intensely private concern does not inevitably require that an Establishment Clause plaintiff be given Doe status, however. While religion is certainly an individual matter of conscience that is constitutionally shielded from government intervention, *Santa Fe Indep. School Dist. v. Doe*, 530 U.S. 290, 301-02 (2000), it is generally practiced openly and communally, and no court from this or any other circuit has considered a plaintiff's religious beliefs to be a matter of such sensitivity as to *automatically*

---

[3] Plaintiffs' assertion that their "*primary* challenge is to government officers acting in their official capacities," doc. 17-1 at 5 (emphasis added), offers little comfort to the individual defendants who are on the hook for money damages if plaintiffs prevail.

8

entitle the plaintiff to Doe status.[4] *See Stegall*, 653 F.2d at 185-86 (emphasizing that there were other factors, not just the fundamental privateness of plaintiffs' views on religion, that warranted plaintiff anonymity in that case). In Establishment Clause cases, therefore, something more is required than just an intrusion into a plaintiff's religious privacy before a court will allow the plaintiff to proceed using a pseudonym. Where the plaintiff is unable to make that additional showing, courts have denied anonymity. *See, e.g., Doe v. Pittsylvania County*, 844 F. Supp. 2d 724, 729 (W.D. Va. 2012) (adult plaintiff challenging the legality of opening school board meetings with Christian

---

[4] Courts have recognized that some private matters involve such a high degree of intimacy that prejudice can be presumed if a plaintiff's identity is disclosed. For instance, in recognizing "abortion as the paradigmatic example of the type of highly sensitive and personal matter that warrants a grant of anonymity," the Eleventh Circuit noted that only two published decisions had ever denied "a plaintiff's request to proceed anonymously in a case involving abortion." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001); *see id.* at 689 (dissenting opinion chiding the majority for establishing "a *per se* rule entitling *any* plaintiff in *any* case involving her abortion to proceed anonymously in this circuit"). Similarly, the public interest in open judicial proceedings typically gives way in cases involving sexual assaults upon minors or the existence of a stigmatizing disease. *See Francis*, 631 F.3d at 1317-19 (where the Eleventh Circuit found the district court abused its discretion in denying anonymity to two minor teenage girls who were coerced by "Girls Gone Wild" agents to engage in explicit and graphic homosexual activity, noting that the "issues involved in this case could not be of a more sensitive and highly personal nature"); *Doe v. Oshrin*, 299 F.R.D. 100, 104-05 (D.N.J. 2014) (granting Doe status to child pornography victim suing alleged perpetrator); *When Fear Rules*, 20 Va. J. Soc. Pol'y & L. at 446-47 (noting that the nature and scope of protectable privacy interests remains "murky").

prayer denied leave to proceed pseudonymously); *Freedom From Religion Found., Inc. v. Cherry Creek Sch. Dist.*, 2009 WL 2176624 (D. Co. July 22, 2009) (denying parties' unopposed motion to allow adult and minor plaintiffs to remain anonymous in a suit challenging public school district's listing of religious attendance as one of "forty developmental assets" that would reflect positively on a student's future success); *Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215 (E.D. Tex. 1997) (minor plaintiffs challenging school district's policy of inviting members of the clergy to counsel with students who volunteered to meet with them would not be allowed to proceed anonymously).[5]

In *Stegall*, the court granted anonymity to a mother and two children challenging the constitutionality of prayer and bible reading exercises in the Mississippi public schools. 653 F.2d at 181. In addition to noting the intensely private nature of religion, the court emphasized "the special vulnerability" of the child litigants and the fact that they might "expect extensive harassment or perhaps even violent reprisals if their identities are disclosed to a . . . community hostile to the viewpoint

---

[5] *See also Doe v. Kamehameha Schools*, 596 F.3d 1036 (9th Cir. 2010) (denying anonymity to minor plaintiffs in a suit challenging school's race-based admission policy despite plaintiffs' claimed fears of physical harm if their names were disclosed).

reflected in [their] complaint." *Id.* at 186. Although the court did not point to any compelling evidence of significant threats of violence or harassment,[6] it emphasized that "[t]he gravity of the danger posed" by revealing plaintiffs' identities need not be as great where children are at risk. *Id.* (viewing "the youth of these plaintiffs as a significant factor in the matrix of considerations arguing for anonymity"). So, even where the evidence of retaliatory violence is not particularly strong, the balance can tip in favor of anonymity in a case involving child litigants seeking to prevent the state from intruding into a matter of the "utmost intimacy."

Defendants concede, as they must, that this case touches upon plaintiffs' intensely personal beliefs about religion, and that the law's special solicitude for children must be taken into account when assessing

---

[6] The only evidence cited by the court was some local newspaper clippings reflecting public reaction to the lawsuit: that the Does' attorney wanted "to destroy Christianity because it is detrimental to his [Jewish] religion;" that the plaintiffs and their attorney wanted "to abolish prayer, not to protect the constitution;" that "Satan is here, working his evil on these people filing the suit. They should be ashamed of themselves;" that "God is fixing to come back . . . [and] show them;" and that "Christians must beat the evil out of these people" and should "band together and whop this evil thing." *Id.* at 183 n. 6. As the dissent pointed out, even the reference to "beat[ing]" or "whop[ing]" smacked "more of fulmination than of serious intent to harm." *Id.* at 187 (*Gee, J.* dissenting) (remarking that the threats of violence cited by the majority "are small potatoes and few in the hill").

the seriousness of the risk posed by the denial of their motion to proceed pseudonymously. Defendants argue, however, that these critical factors do not weigh in favor of granting plaintiffs' motion under the particular circumstances of this case.

First, defendants note (and correctly) that plaintiffs have presented no evidence of any "concrete threats of physical harm or extreme harassment directed toward them . . . *in response to [the] filing of this lawsuit.*" Doc. 37 at 2, 9 (emphasis in original). Defendants argue that neither plaintiffs' "vague, unsubstantiated" fears of a hostile community reaction, *id.* at 11, nor their reference to "horror stories of harassment" in other Establishment Clause cases, *id.* at 15, overcomes the public's interest in open judicial proceedings. Second, defendants contend (again, correctly) that the mere fact that two of the individual plaintiffs are minors does not automatically entitle them to Doe status. *Id.* at 17-19; *see Stegall*, 653 F.2d at 186 (not "all civil rights suits mounted in the name of children may be prosecuted anonymously"). Finally, defendants claim that they will suffer "prejudicial and fundamental unfairness" if the plaintiffs are allowed to proceed anonymously. *Id.* at 21. The Court is not convinced by these arguments.

12

It is difficult, if not impossible, to quantify the risk of harm a plaintiff faces when litigating such a socially-charged issue as the constitutionality of teacher-led prayer in a public school setting. In this case, however, the Court does not have to speculate whether plaintiffs will suffer any harm, for they have stated in an unrebutted declaration that such harm has *already* occurred. According to Jane Doe's Declaration, the Doe children were pressured to ignore their parents and adopt a theistic belief system, and made to suffer when they failed to do so. Doc. 17-2[7]. Defendants' assertion that this evidence is simply a "re-hash" of the complaint's allegations, and therefore of little or no importance, is not persuasive. Doc. 37 at 9. Other courts have given great weight to plaintiff declarations about pre-filing reprisals resulting

---

[7] Jane Doe's declaration, made under penalty of perjury, asserts that her children were proselytized by various teachers at their school (including two not named as defendants); that they were singled out and ostracized for their views on religion; that her first grader was held back from recess, encouraged to "make a good decision" regarding prayer at school, and told not to listen to her mother, who was "a bad person for not believing in God;" and that her kindergartner was made to wait in the hallway while the rest of the class prayed, was then teased by a classmate, and became so uncomfortable that she had to be removed from school. Doc. 17-2 at 2-3. Jane Doe expresses her belief that "members of the Emanuel County community are often intolerant of different religious beliefs," and states that the broader community "will have passionate feelings, including anger, in response to objections about teacher-led prayer in schools." *Id.* at 3. She fears that if plaintiffs' identities are disclosed "strangers will harass and pressure our children into their religion the way their teachers and classmates have." *Id.* Defendants have not responded with any sworn statement or declaration disputing these assertions.

13

from "airing their views on religion." *Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 723 (7th Cir. 2000), *rev'd in part on other grounds*, 687 F.3d 840 (7th Cir. 2012) (specifically adopting the panel opinion's anonymity analysis).[8] That the evidence of retaliatory harm relates to defendants' own actions rather than the post-filing behavior of other members of the community does not diminish its significance. The defendants, after all, are themselves members of that small community,[9] and it is not unreasonable to assume that their views are shared by many others who reside in the local area. If these defendants -- who are educated professionals charged with the welfare and protection of very young children -- are willing to pressure those children to ignore their parents and join in classroom prayer, and then ostracize them when they refuse to do so, it is permissible to infer that other, less responsible members of the local community (or the broader Internet community) might engage

---

[8] While that court noted that a few of the comments posted in an online community forum were somewhat disturbing, it pointed out that there was "no evidence of actual violence arising out of this particular suit." 658 F.3d at 723.

[9] As of the 2010 census, the population of Emanuel County, Georgia was 22,598. U.S. Census Bureau, *Georgia: 2010, Summary Population and Housing Characteristics* at 16, Table 1 (issued Aug. 2012), published at www.census.gob./prod/cen 2010/cph-1-12.

14

in even more extreme conduct if they learn the identities of the plaintiffs in this litigation.[10] The Court, therefore, is not convinced by defendants' argument that plaintiffs' concern about their welfare is "unsubstantiated." Doc. 37 at 12.

As this case unfolds the Court may be required to issue a ruling that is most unpopular in the small, mostly rural community where plaintiffs reside, and then the Furies may be unleashed. Many reported cases have described the most vicious, and sometimes criminal, acts committed against those who have commenced litigation under the Establishment Clause. *See When Fear Rules*, 20 Va. J. Soc. Pol'y & L. at 438, 455-67. The Court recognizes that what's past is not always prologue, and that many of the passions that were aroused when the prayer-in-school cases first began to wind their way through the federal courts may diminish over time. (This is true of many other civil rights litigation as well: One no longer sees mass public demonstrations because children of African American heritage are attending a public school or college from which they were once excluded.) But reprisals

---

[10] "[M]odern technology has made it easier for non-parties to disseminate litigants' contact information and to encourage others to harass plaintiffs." *When Fear Rules*, 20 Va. J. Soc. Pol'y & L. at 439.

against plaintiffs litigating church-state issues are still commonplace. *Id.* Moreover, the plaintiffs in this case have offered unrebutted evidence that the Doe children have already suffered mental anguish and emotional distress as a result of their professed beliefs about religion. In assessing the seriousness of the potential harm arising from the disclosure of plaintiffs' identities, the Court must take into account the "special vulnerability" of the child litigants, a status which assumes even greater significance here because they are both under 8 years old. Doc. 17-1 at 7. The Court rejects the notion that this factor gets little weight because the Doe parents have standing to sue on their children's behalf, doc. 37 at 18, or that the children are unnecessary plaintiffs in this litigation. Unlike in some cases, where defendants' conduct is alleged to have violated the Constitution in some general way, here plaintiffs assert that the Doe children were personally targeted because of their beliefs and that they sustained direct and unique injuries at defendants' hands. Clearly, the Doe children are not non-essential parties.

Finally, defendants argue that it would be inherently unfair to allow plaintiffs to proceed anonymously in a suit that not only attacks their reputation and integrity but that seeks compensatory and punitive

damages against them in their individual capacities. Doc. 37 at 20-24. While the Court does not agree with plaintiffs' assessment that there is *"no risk* of unfairness to Defendants," doc. 17-1 at 16 (emphasis added), it finds that the potential harm to defendants is not so great as to override plaintiffs' privacy interest or need to shield their children from any further harm.  First, this case primarily concerns the resolution of a legal question—the constitutionality of allowing teacher-led prayer in a public school classroom—rather than a determination of plaintiffs' credibility regarding hotly disputed factual allegations.  Thus there does not appear to be a compelling need for defendants to publicize plaintiffs' names in order to "shake out" information bearing on their credibility. *When Fear Rules*, 20 Va. J. Soc. Pol'y & L. at 448.[11]  Defendants do not state particularly *what* facts are in dispute, other than a statement in defendant Thompson's brief denying that she engaged in "bullying" or "prosyletizing" either Doe child. Doc. 37 at 9. Defendants, however, do not dispute plaintiffs' central allegation that the Doe children were

---

[11] "The likelihood of prejudice to the defendant is higher in cases with controverted factual records, where the plaintiff's personal credibility plays a large role in establishing the weight of the evidence. . . . In contrast, when the matter is a question of law and the facts are undisputed, a defendant may suffer little prejudice from a pseudonymous plaintiff," 20 Va. J. Soc. Pol'y & L. at 448, for in such cases the plaintiff "plays a relatively minor role in the litigation." *Doe v. Barrow County*, 298 F.R.D. 189, 194 ( N.D. Ga. 2003).

17

subjected to teacher-led classroom prayer. Nor do they specifically rebut plaintiffs' declaration that they were singled out for special treatment when they did not join in those prayers. Second, defendant Thompson concedes that she knows the identities of the Doe plaintiffs, doc. 37 at 10, and she assumes that this is true for "the other defendants as well." *Id.* (The defendants who have adopted Thompson's response do not challenge this statement.) "[W]here the defendants already know the plaintiffs' names . . . their interest in fairness is diminished because defendants may depose plaintiffs, request ordinary discovery, and otherwise litigate the case normally." *When Fear Rules*, 20 Va. J. Soc. Pol'y & L. at 448; *Francis*, 631 F.3d at 1318-19 (defendants who know plaintiffs' identities "are not barred from conducting a full range of discovery in building a defense for trial"). Allowing plaintiffs to cloak their identities from the public will not pose that great a risk of unfairness to defendants, therefore.[12]

---

[12] Nor will plaintiffs' use of fictitious names unduly prejudice the public interest. All of the pleadings and other filings in this case remain unsealed, and thus the public is well aware of the nature of the suit, the positions of the parties, and the issues at play. The public and the press will have full access to all court proceedings, including the trial itself. *Stegall*, 653 F.2d at 185 (noting that the public's interest in open and fair judicial proceedings is not so impaired "by a grant of anonymity to a party as it is by a closure of the trial itself," for allowing a party to use a fictitious

## II. CONCLUSION

This case, like *Stegall*, involves "the special status and vulnerability of the child-litigants, the showing of possible threatened harm and serious social ostracization based upon militant religious attitudes, and the fundamental privateness of [plaintiffs'] religious beliefs." 653 F.2d at 186. After balancing the competing interests, the Court is satisfied that both the public's and the defendants' customary right to full transparency in judicial proceedings must yield to plaintiffs' demonstrated need to litigate this "quintessentially private matter" without disclosing their true identities. *Id*. Accordingly, the Court **GRANTS** plaintiffs' motion to proceed pseudonymously in this litigation (doc. 17).

The Court is entering a separate Protective Order that adopts most of the provisions of the proposed protective order presented by the plaintiffs (doc. 17-3). The Court has re-worded paragraph 3 of that proposed order to make clear that information regarding plaintiffs' identities can be disclosed to *all* defense counsel and their support staffs, not just to the "Emanuel County Schools' attorneys" and their staffs.

---

name "does not obstruct the public's view of the issues joined or the court's performance in resolving them").

The Court will also permit defense counsel to share that information with other attorneys within their firms whether or not those attorneys are deemed essential to the representation of the defendant, *provided* those attorneys are made aware of the terms of the Protective Order. Finally, the Court has deleted paragraph 7 of the proposed order, which would excuse the Doe plaintiffs from appearing at any "open court hearings." Doc. 17-3 at 3. The Court defers ruling on that matter, and it will allow plaintiffs to renew their request for such relief upon the scheduling of any hearing or trial in this case.

**SO ORDERED** this 18TH day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA